**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: | CASE NO. 10-10176 |
| **CHARLES PAUL ALONZO, JR.**<br>**& CAROLYN WILLIAMS ALONZO**<br>   *Debtors* | SECTION "B"<br><br>CHAPTER 7 |

| | |
|---|---|
| **HIGHGROUND, INC., ET AL**<br>   *Plaintiffs*<br><br>**VERSUS**<br><br>**ALONZO, ET AL**<br>   *Defendants* | <br><br>ADVERSARY PROCEEDING<br>NO. 10-1042 |

*Consolidated with*

| | |
|---|---|
| **HIGHGROUND, INC., DAVID HALLIN**<br>**AND RONDA HYATT**<br>   *Plaintiffs*<br><br>**VERSUS**<br><br>**CHARLES AND CAROLYN ALONZO**<br>   *Defendants* | <br><br><br>ADVERSARY PROCEEDING<br>NO. 10-1043 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM OPINION

Adversary proceeding number 10-1042 came before the court on the complaint and the counterclaim thereto of Highground, Inc., David Hallin, Ronda Hyatt and several other plaintiffs against Charles Paul Alonzo, Jr., Carolyn Williams Alonzo, Ronald Lee Blackburn, Tri-Koon Holdings, L.L.C., Phoenix Oil & Gas, Inc. and Treaty Energy Corporation. The court consolidated it for trial with adversary proceeding number 10-1043, a complaint by Highground, Inc., David Hallin and Ronda Hyatt against Charles Paul Alonzo, Jr. and Carolyn Williams Alonzo. The trial was held on January 10, 11, 12; May 19, 20; and June 24, 2011. The court,

1

having reviewed the exhibits, the testimony of witnesses, and the arguments and briefs of counsel, and for the reasons set forth below, finds for the plaintiffs in adversary proceeding 10-1042 on the breach of contract and fraud claims and dismisses the counterclaim. Adversary proceeding 10-1043 is dismissed.

**I.  BACKGROUND FACTS**

Carolyn and Charles Paul Alonzo, Jr. ("the Alonzos"), defendants in both adversary proceedings, are co-debtors in the main Chapter 7 bankruptcy case.[1] The undisputed facts show that the Alonzos and Ronald Lee Blackburn ("Blackburn") were business associates and majority stock holders in Phoenix Associates Land Syndicate, Inc ("Phoenix Associates").[2] The Alonzos were officers and directors of Phoenix Associates. Blackburn was not.[3] The Alonzos and Blackburn also incorporated Phoenix Oil & Gas, Inc. in August 2007 and activated Tri-Koon Holdings, LLC in October 2008.[4] The plaintiffs allege that the Alonzos, within one year preceding the filing of the Chapter 7 bankruptcy petition on January 22, 2010, donated their interests in Phoenix Oil & Gas and Tri-Koon Holdings to Blackburn.

Phoenix Associates is a publicly traded company with roughly 2000 shareholders that was originally formed by the Alonzos in 1997.[5] Phoenix Associates bought distressed business entities, purchasing the entities with various combinations of cash and preferred stock in Phoenix Associates or other entities, as a means of creating viable business operations for the company.

---

[1]  Bankruptcy Case No. 10-10176.
[2]  Pre-trial order. Case No. 10-1042 at p. 2.
[3]  Blackburn testified that he had been on the board of directors of Phoenix Associates in 2003, but then had been fired. *See* Trial transcript of 1/12/11 at p.p. 22-24. He further testified that he has not since been a member of the board or an officer despite the fact that he sometimes holds himself out to be an officer, such as when he signed the purchase agreement with Treaty Petroleum, Inc. as the Chief Operations Officer of Phoenix Associates Land Syndicate, Inc. *See* Exhibit 6.
[4]  Blackburn and the Alonzos each testified that both of these companies were created earlier when they had plans to make different acquisitions unrelated to this case, but these companies ended up not being used for those original purposes. Thus, when an entity was needed to conduct new business, these entities were already available. Trial Transcript of 1/12/11 at pp. 27, 53, 96-97 and 137-38.
[5]  Alonzos' post-trial brief at p. 2. Case No. 10-1043 (P-77).

2

Although Phoenix Associates over time acquired 26 such companies, the business ultimately failed, leaving Phoenix Associates with several million dollars of accrued debt.[6]

David Hallin and Ronda Hyatt, two of the plaintiffs in this case, were officers and directors of Treaty Petroleum, Inc. ("Treaty Petroleum"), which had been formed in 2006 and held a lease on oil property in Texas, ("the W.W. Owens leasehold"). The sole asset of Treaty Petroleum was the W.W. Owens leasehold. Highground, Inc., a Texas corporation owned by Ms. Hyatt and her husband, is the licensed operator of the W.W. Owens leasehold. In its complaint, Highground states that it owns an overriding royalty interest in the W.W. Owens leasehold and alleges that this royalty interest has been lost as a result of Blackburn's failure to develop the lease.[7]

On May 16, 2008, Blackburn signed a purchase agreement on behalf of Phoenix Associates for the purchase of Treaty Petroleum. The agreement specified that the shareholders of Treaty Petroleum were to receive preferred stock in Phoenix Associates in exchange for their shares of Treaty Petroleum.[8] Following the acquisition, the shareholders of Treaty Petroleum were instead issued shares of Phoenix Oil & Gas.[9] Some of the shareholders of Treaty Petroleum complained to Blackburn that they did not want shares of Phoenix Oil & Gas, and they were told by Blackburn that Phoenix Oil & Gas was a wholly owned subsidiary of Phoenix Associates and that Phoenix Associates preferred to structure the purchase this way instead of

---

[6] Phoenix Associates filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on June 10, 2009, in the Eastern District of Louisiana (Case No. 09-11743). In the schedules in the Chapter 11 case, Phoenix Associates disclosed assets totaling $3,600.00 and liabilities of $20,135,813.31. Pursuant to a motion filed by Phoenix Associates, the case was converted to a Chapter 7 liquidation on July 31, 2009.
[7] Plaintiffs' Complaint in Adv.P. No. 10-1042 at ¶ 32(a).
[8] Plaintiffs' Exhibit 6. Purchase Agreement dated May 16, 2008.
[9] Plaintiffs' Exhibit 27 and 29. This substitution of the stock of Phoenix Oil & Gas instead of Phoenix Associates is the real bone of contention as plaintiffs feel strongly that this was a fraudulent collusive act that greatly damaged them financially. They fail to elucidate and to prove exactly how this damaged them and the amount of the damages.

3

what was specified in the purchase agreement.[10] As it turns out, Blackburn had no authority from Phoenix Associates to purchase Treaty Petroleum, and Phoenix Oil & Gas was a corporation owned by Blackburn that had no direct connection with Phoenix Associates.

Having gained control of Treaty Petroleum, Blackburn then merged Treaty Petroleum with another entity, Alternate Energy Corporation, to form Treaty Energy Corporation ("TECO").[11] After this merger, the plaintiffs were offered the chance to convert their Phoenix Oil & Gas stock for TECO stock,[12] which they did, despite the fact that they were still attempting to get the Phoenix Associates stock they had been promised in the purchase agreement.[13]

Phoenix Associates filed a Chapter 11 bankruptcy petition on June 10, 2009. The Alonzos filed for personal Chapter 7 relief on January 22, 2010. In the wake of these bankruptcy filings, Highground, David Hallin and Ronda Hyatt filed adversary proceeding number 10-1043 against the Alonzos objecting to the discharge of their debt specifically under § 523 of the Bankruptcy Code, and to the discharge of the Alonzos generally under § 727 of the Bankruptcy Code. Highground, David Hallin, Ronda Hyatt and the other plaintiffs also removed a suit they had filed in state court in Louisiana in November 2009 against the Alonzos, Blackburn, Tri-Koon Holdings, Phoenix Oil & Gas, Inc. and Treaty Energy Corporation, alleging breach of contract, fraud, unjust enrichment, and seeking damages in the amount of $15,000,000.[14]

In adversary proceeding number 10-1043, the plaintiffs have alleged several causes of action against the Alonzos under §§ 727(a)(2)(A), 727(a)(2)(B), 727(a)(4)(A), 523(a)(2)(A), 523(a)(4), and 523(a)(6) of the U.S. Bankruptcy Code.[15] At the close of trial, the court dismissed

---

[10] Plaintiffs' Exhibit 17. Trial transcript of 1/10/12 at pp. 71 and 75.
[11] Plaintiffs' Exhibit 34.
[12] Plaintiffs' Exhibit 44.
[13] Plaintiffs' Exhibit 29.
[14] Adversary Proceeding No. 10-1042.
[15] 11 U.S.C. § 727; 11 U.S.C. § 523.

the claim alleged to arise under § 727(a)(2)(B) because the plaintiffs had failed to provide any evidence of a post-petition transfer. The court also dismissed the claim alleged under § 523(a)(4) because the plaintiff had failed to introduce any evidence that the debtors were acting in a fiduciary capacity. Finally, the court dismissed the claim alleged under § 523(a)(6) for lack of evidence of the debtors' malicious intent or of an objective, substantial certainty of harm to the plaintiffs. The court instructed the parties to submit post-trial briefs discussing the remaining claims in the two adversary proceedings.

## II. LAW AND ANALYSIS

### A. THE STATE LAW CAUSES OF ACTION

#### FRAUD AND BREACH OF CONTRACT

The plaintiffs' state court petition alleges a cause of action for fraud and breach of contract under state law. The plaintiffs allege that the purchase agreement contract was breached. Under Louisiana law, a contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished.[16] A contract is formed by the consent of the parties established through offer and acceptance.[17] The four elements of a valid contract are: 1) the parties must possess the capacity to contract; 2) the parties' mutual consent must be freely given; 3) there must be a certain object for the contract; and 4) the contract must have a lawful purpose.[18] The court must find that there was a meeting of the minds to constitute consent.[19] Consent may be vitiated by error, fraud or duress.[20] Louisiana Civil Code Article 1953 defining fraud states: "Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other.

---

[16] La. C. C. Art. 1906.
[17] La. C. C. Art. 1927.
[18] *Worley v. Chandler,* 7 So.3d 38, 42 (La.App. 2 Cir. 2009). La. C.C. Arts. 1918, 1927, 1966 and 1971.
[19] *Worley v. Chandler,* 7 So.3d at 42.
[20] La. C.C. Art. 1948.

5

Fraud may also result from silence or inaction." Article 1957 states: "Fraud need only be proved by a preponderance of the evidence and may be established by circumstantial evidence."

Fraud as defined by Louisiana law requires that the plaintiffs show the intent to deceive and the resulting loss or damage. The plaintiffs claim that Blackburn induced the plaintiffs to sell Treaty Petroleum to Phoenix Associates in exchange for stock in Phoenix Associates and then switched ownership from Phoenix Associates to Phoenix Oil & Gas and issued stock from Phoenix Oil & Gas.[21]

### 1. Intent to deceive.

At trial, Blackburn testified that the initial negotiations for this purchase agreement of May 16, 2008 were on behalf of Phoenix Associates. He then testified that the Board of Directors of Phoenix Associates turned down the deal, and the Alonzos indicated they did not want to be involved with the transaction. Blackburn then proceeded with the acquisition using Phoenix Oil & Gas. Despite the fact that there was no authority from Phoenix Associates to purchase Treaty Petroleum, Blackburn continued to represent to the plaintiffs that Phoenix Associates was the purchaser. This is evidenced in part by the purchase agreement between the plaintiffs and Blackburn, signed by both parties.[22] Blackburn signed the purchase agreement as the chief operating officer of Phoenix Associates, despite the fact that he was not an officer of Phoenix Associates, and he did not have authority from the board of Phoenix Associates to enter into a purchase agreement on behalf of the corporation.[23] Also, the plaintiffs have testified that they believed they were selling Treaty Petroleum to Phoenix Associates, and it is clear from the

---

[21] Although the plaintiffs did not make the point clearly, the end result of this switcheroo by Blackburn was that the plaintiffs did not receive the promised stock in Phoenix Associates – a corporation that filed a Chapter 11 proceeding on June 10, 2009, a little more than a year after the purchase agreement, dated May 16, 2008 – but instead received stock in Phoenix Oil & Gas, which was converted to stock in TECO, an entity that is still not in any insolvency proceedings. As to the value of the TECO stock, see text pp. 9-10, *infra*.
[22] Exhibit 6.
[23] Trial transcript of 1/12/10 at pp. 24-26.

6

testimony that they relied on Blackburn's representations that he was representing Phoenix Associates.[24]

Blackburn did not state that he ever informed the plaintiffs before they signed the purchase agreement that Phoenix Oil & Gas, and not Phoenix Associates, was the purchaser. In fact even when the switch from Phoenix Associates to Phoenix Oil & Gas was made, Blackburn told the plaintiffs that it was because Phoenix Oil & Gas was a wholly owned subsidiary of Phoenix Associates and that Phoenix Associates preferred that the stock be issued in the name of Phoenix Oil & Gas.[25] Nothing was ever mentioned about the fact that Phoenix Associates, acting through the Alonzos, had declined to participate in the transaction at all.[26] The court finds that there was intent to deceive by Blackburn with respect to the purchase of Treaty Petroleum.[27]

Nor is Carolyn Alonzo off the hook under the state law fraud claim. Carolyn Alonzo signed the Phoenix Oil & Gas stock certificates as the secretary/treasurer.[28] Although Carolyn Alonzo was not involved in negotiating the purchase agreement, she served as a member of the board of directors of Treaty Petroleum for several months after the sale, and she did not attempt to correct any misperceptions that arose on the part of the plaintiffs as to the identity of the purchaser of Treaty Petroleum.[29] Additionally, when the stock certificates were issued to the plaintiffs bearing the name Phoenix Oil & Gas instead of Phoenix Associates, David Hallin told

---

[24] Trial transcript of 1/11/11 at pp. 37, 42 and 49.
[25] Plaintiffs' Exhibit 17. Trial transcript of 1/10/11 at p. 57.
[26] Plaintiffs' Exhibit 17. Trial transcript of 1/11/11 at p. 67.
[27] Blackburn is personally liable for the fraud even though he signed the agreement as an officer of Phoenix Associates. .Louisiana Civil Code Article 3019 states:
> A mandatary who exceeds his authority is personally bound to the third person with whom he contracts, unless that person knew at the time the contract was made that the mandatary had exceeded his authority or unless the principal ratifies the contract.

[28] Plaintiffs' Exhibit 27. Trial transcript of 1/10/10 at p. 67.
[29] Plaintiffs Exhibit 9, 17, 25 and 31. The Alonzos served on the board of directors of Treaty Petroleum from June 2008 through at least November 2008. Trial transcript of 1/10/11 at pp. 73-75. Exhibit 31. Although the testimony shows that theAlonozos allowed Blackburn to vote as their proxy, and minutes of the board meetings were sent to Carolyn Alonzo. Trial transcript of 1/10/11 at pp. 57-58. It is simply not clear whether the Alonzos attended and participated in board meetings.

Carolyn Alonzo that they should be corrected because they were wrong. She did not inform him that Phoenix Associates did not issue the stock because it was not the purchaser; instead, she told him that she had made a mistake.[30] Because under Louisiana law, fraud may also result from silence or inaction, the court finds that Carolyn Alonzo had intent to deceive the plaintiffs.

The court does not find that Paul Alonzo had intent to deceive because there is some question as to whether he actually participated in any board meetings, and there is no evidence that he actually received any meeting minutes of the Treaty Petroleum board meetings while he served as a member. No other evidence was submitted by the plaintiffs to show that Paul Alonzo had any knowledge of Blackburn's fraudulent activities with respect to the plaintiffs.

**2. Resulting loss or damages.**

In Louisiana, damages are measured by the loss sustained by the obligee and the profit of which he has been deprived.[31] The plaintiffs have articulated three areas where they claim to have suffered damages as a result of Blackburn and Carolyn Alonzo's deception. First, the plaintiffs produced three promissory notes, all dated May 16, 2008, which is the same date the purchase agreement was executed, all signed by Blackburn as Chief Operating Officer of Phoenix Associates. The first note is payable to Highground in the amount of $150,000.00 for the royalty interest in the W.W. Owens leasehold.[32] The second note is also payable to Highground in the amount of $59,950.00; it is for money loaned to Treaty Petroleum prior to the sale and is included in the purchase agreement as a part of the sale.[33] The third note is payable to

---

[30] Trial transcript of 1/10/10 at p. 111.
[31] Louisiana Civil Code Article 1995.
[32] Plaintiffs' Exhibit 141. The note states that it "shall be construed and enforced in accordance with, and be governed by, the laws of the State of Texas."
[33] Plaintiffs' Exhibit 142. The note states that it "shall be construed and enforced in accordance with, and be governed by, the laws of the State of Texas."

8

David Hallin in the amount of $45,000.00; it is for money loaned to Treaty Petroleum prior to the sale and is included in the purchase agreement as a part of the sale.[34]

The plaintiffs have shown a loss with respect to the three promissory notes. The notes were all signed by Blackburn as the Chief Operating Officer of Phoenix Associates Land Syndicate. Under both Texas and Tennessee law, and according to the Restatement Third of Agency:

> A person who purports to make a contract, representation, or conveyance to or with a third party on behalf of another person, lacking power to bind that person, gives an implied warranty of authority to the third party and is subject to liability to the third party for damages for loss caused by breach of that warranty, including loss of the benefit expected form performance by the principal, unless
>
> 1) the principal or purported principal ratifies the act as stated in § 4.01; or
>
> 2) the person who purports to make the contract, representation, or conveyance gives notice to the third party that no warranty of authority is given; or
>
> 3) the third party knows that the person who purports to make the contract, representation, or conveyance acts without actual authority.[35]

None of the exceptions to Blackburn's personal liability were proved at trial, thus the court finds that Blackburn is personally liable on the notes under both Texas and Tennessee law. Carolyn Alonzo did not sign the notes, and there is no evidence that leads the court to find that she is liable on the notes.

Second, the plaintiffs claim they suffered a loss because they received stock in Phoenix Oil & Gas instead of in Phoenix Associates. They later converted this stock to TECO stock. The testimony showed that TECO stock at the time of the trial was trading at around 3.5 cents per share - and that a few weeks before the trial it was trading at around 9 cents per share - so it has

---

[34] Plaintiffs' Exhibit 143. The note states that it "shall be construed and enforced in accordance with, and be governed by, the laws of the State of Tennessee."
[35] Restatement (Third) of Agency § 6.10 (2006). *See also Hartford Cas. Ins. Co., v. Walker County Agency*, 808 S.W.2d. 681, 687 (Tex.App.-Corpus Christi, 1991); *Finchum v. Patterson*, 2008 WL 2019408 at *6 (Tenn.App. 2008).

some value.[36] The purchase agreement states that the purchase price to be paid was for preferred stock that would accumulate dividends of more preferred stock in Phoenix Associates. Phoenix Associates is now in a Chapter 7 liquidation, with liabilities far in excess of its assets, so any preferred stock the plaintiffs would have received and held onto in Phoenix Associates would now be worth nothing. Shares in stock in TECO, even though worth only a few cents per share, particularly when you hold several million shares as the plaintiffs do, is worth far more than nothing. Thus, as far as the stock the plaintiffs received for the sale, no loss has been shown.

Third, the plaintiffs contend that they suffered loss in that the W.W. Owens leasehold was lost due to Blackburn's refusal to finance operations on the lease. The testimony at trial showed, however, that even prior to the sale of Treaty Petroleum, the lease was not producing much oil and Treaty Petroleum was in danger of losing the lease because Treaty Petroleum lacked the capital to fix the problems with the wells and pay for needed equipment. Although the plaintiffs claim that the lease was potentially worth $25 million dollars, the court finds that this is a speculative value at best.[37] Further, given Treaty Petroleum's dire financial circumstances in the months leading up to the sale, the court finds it more likely than not that the lease would have been lost regardless of the actions of Blackburn.[38]

As to the second and third categories of damages alleged by the plaintiffs, they have not shown a loss. They currently hold shares in TECO, which are worth some small amount per share. They do not hold shares in Phoenix Associates, which is worth nothing. Thus, looking at the value of the stock they should have received and comparing to the value of the stock they did receive, they are ahead in the game.

---

[36] Trial transcript of 5/20/11 at pp. 28 and 57.
[37] Trial transcript of 6/24/11 at p. 80.
[38] Bann Exhibits ; trial transcript of

Although the plaintiffs claim that they suffered damages through the loss of the W.W. Owens leasehold, no evidence was presented as to the value of the W.W. Owens leasehold other than the testimony of Ms. Hyatt, a plaintiff in this proceeding, that there was oil worth $25 million dollars in the lease. No expert testified as to value, no documents showing the value of the lease were introduced. The plaintiffs have simply not given the court any basis to find that they have suffered any damages other than the unpaid promissory notes as a result of Blackburn and Carolyn Alonzo's actions.

## **UNJUST ENRICHMENT**

The plaintiffs' complaint alleges a cause of action for unjust enrichment under state law. Louisiana courts have held that there are five requirements for proving a claim of unjust enrichment: 1) there must be enrichment to the defendant; 2) there must be an impoverishment sustained by the plaintiff; 3) there must be a connection between the enrichment and the resulting impoverishment; 4) there must be an absence of justification or legal cause for the enrichment and the impoverishment; and 5) the action will only be allowed when there is no other remedy at law i.e., the action is subsidiary or corrective in nature.[39]

As already held, the plaintiffs now have TECO stock acquired by the plaintiffs by converting the stock of Phoenix Oil & Gas, which though not the bargained for consideration, was nevertheless consideration. The plaintiffs claim that the defendants were unjustly enriched because no consideration was given by the defendants in exchange for the shares of Treaty Energy Corporation they received.[40] The plaintiffs' post-trial brief has a small section on unjust enrichment beginning on page 19, but the court was unable to make any sense of the argument set forth in the brief. The plaintiffs' brief did not address how any of the evidence presented at

---

[39] *Edwards v. Conforto*, 636 So.2d 901, 903 (La. 1993).
[40] Plaintiffs' Pre-trial Order in Case No. 10-1042 (P-31), section IVB.

11

trial proved any of the requirements for unjust enrichment under Louisiana law. It is not the court's job to make the plaintiffs' argument for them. The court finds that the plaintiffs did not prove their unjust enrichment claim.

## THE DEFENDANTS' COUNTERCLAIM

The defendants' answer to the plaintiffs' state court petition contains a counterclaim for damages for fraudulent misrepresentation. The defendants' claim is based on enforcement proceedings before the Railroad Commission of Texas.[41] The defendants' claim further alleges that the plaintiffs' provided the defendants with false information with respect to the status of Crocket County leases and oil reserves on the lease. The defendants also allege the plaintiffs prevented Blackburn from communicating with the Lessor and failed to keep the defendants informed about ongoing proceedings in front of the Railroad Commission of Texas.

The testimony at trial showed that Blackburn was well aware of the problems of Treaty Petroleum when he entered into the purchase agreement.[42] There is no other evidence to support the defendants' claim. The court dismisses the counterclaim.

### B. THE DISCHARGEABILITY CLAIMS

The Bankruptcy Code requires a discharge for the debtors unless a statutory exception applies under § 727, or an individual debt is categorized as non-dischargeable under § 523. The plaintiffs have alleged that the Alonzos and Blackburn are liable for the fraudulent transfer of property in the year preceding bankruptcy, making a false statement under oath, and obtaining a debt under false pretenses. The plaintiffs thus ask this court to deny a discharge to the Alonzos, pursuant to § 727(a)(2)(A) and § 727(a)(4)(A), as well as for the debt to be classified as non-dischargeable under § 523(a). In order to prevail, the plaintiffs must prove the elements of each

---

[41] Answer and Counterclaim at p. 9 citing to Railroad Commission of Texas, Oil and Gas Docket No. 7C-0259880.
[42] Trial transcript of 5/19/11 at pp. 55-56.

count by a preponderance of the evidence.[43] For the plaintiffs' claims arising under § 727 of the Bankruptcy Code, "the exceptions are to be construed strictly against the creditor and liberally in favor of the debtor."[44]

## **PLAINTIFFS ARE CREDITORS**

The Alonzos argue that in order for the plaintiffs to have standing to bring any of these claims, the court must first find the plaintiffs to be creditors of the debtors. The Fifth Circuit has held that the standing requirement for a claim arising out of the Bankruptcy Code is that the action must be brought by a creditor, which is defined as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor."[45] The Bankruptcy Code defines a "claim" as a "right to payment, whether or not such right is reduced to judgment."[46] In drafting the Bankruptcy Code, Congress intended to adopt the broadest possible definition for "claim."[47]

The Alonzos argue that in order to be a creditor, there must be a creditor-debtor relationship and that the debtor must owe a debt to the party bringing the claim.[48] The Alonzos further claim that the plaintiffs do not qualify as creditors because they have not established that they have sustained a loss in this case. This interpretation of the term "creditor," however, calls for a narrower interpretation than the broad definition of "claim" set forth in the Bankruptcy Code. The plaintiffs have filed proofs of claim with respect to the causes of action that are before the court.[49] Additionally, the plaintiffs are listed as creditors on the Alonzos bankruptcy

---

[43] *Grogan v. Garner*, 498 U.S. 279, 286 (1991); *In re Hollander*, 438 Fed.Appx. 274, 278 (5th Cir. 2011).
[44] *In re Duncan*, 562 F.3d 688, 695 (5th Cir. 2009).
[45] *In re Davis*, 194 F.3d 570, 574 (5th Cir. 1999) *quoting* 11 U.S.C. § 101(10)(A).
[46] 11 U.S.C. § 101(5)(A).
[47] 2 *Collier on Bankruptcy*, ¶ 101.5
[48] Case No. 10-1043, (P-77) at p. 13.
[49] David and Pamela Hallin filed Proof of Claim numbers 9, 10, 19, 20 and 21 in the main bankruptcy case. Claim 9, amended by Claim 19, is a claim for damages resulting from breach of contract in the amount of $200,694.54. Claim 10 is a breach of contract claim for damages totaling $52,849.13. Claims 20 and 21 are claims for $4,706.30

schedules. That these claims have not been reduced to judgment is irrelevant to the analysis of whether the plaintiffs are creditors. The court holds that the plaintiffs are creditors in the Alonzos' bankruptcy case and thus have standing to object to discharge and to dischargeability.

### SECTION 727(a)(2)(A)

First, the plaintiffs have objected to the Alonzos' discharge by alleging that they have transferred property of the estate with intent to defraud a creditor in the year preceding bankruptcy, a violation of § 727(a)(2)(A) of the Bankruptcy Code.[50] The plaintiffs allege that this violation arose out of the donation of the debtor's two-thirds interest in Tri-Koon Holdings—an interest allegedly worth $15 million—in March 2009 prior to filing for bankruptcy in January 2010. The plaintiffs also allege a violation in the transfer by the Alonzos of their interest in Phoenix Oil & Gas to Blackburn, although the details of that alleged violation are somewhat less clear.[51]

In order to deny a discharge, the plaintiffs must prove four elements: (1) there was a transfer of property, (2) that property belonged to the debtor, (3) the transfer occurred within one year of the filing of the bankruptcy petition, and (4) that the debtor acted with intent to hinder,

---

and $46,299.33, respectively. Proof of claim 21 is for the promissory note introduced at trial as Plaintiffs' Exhibit 143.

[50] Section 727(a)(2)(A) states:

> The court shall grant the debtor a discharge, unless the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed property of the debtor, within one year before the date of the filing of the petition.

[51] The plaintiffs do not provide any detail about when they allege the Alonzos transferred their interest in Phoenix Oil & Gas to Blackburn; the testimony of Blackburn and the Alonzos shows that no stock was ever issued in Phoenix Oil & Gas, and the Alonzos told Blackburn he could use it to acquire Treaty Petroleum in May 2008. This fits in with the rest of the story told by the Alonzos and Blackburn. The court finds that any interest the Alonzos may have had in Phoenix Oil & Gas was transferred in May 2008 and is outside the one year period required by § 727(a)(2)(A).

delay, or defraud a creditor or officer of the estate.[52] The intent to defraud must be actual, not constructive; however, the intent of the debtor may be proved through circumstantial evidence.[53] The plaintiffs must prove these four elements by a preponderance of the evidence.[54] The purpose of § 727(a) is to deny a discharge to persons who have intent to defraud by transferring property that would have become part of the bankruptcy estate.

The plaintiffs allege that the Alonzos violated § 727(a)(2)(A) by transferring their membership interests in Tri-Koon Holdings, to Blackburn on or around March 24, 2009, which is within one year of filing for relief under Chapter 11 on January 22, 2010. The debtors argue that the transfer to Blackburn occurred in October 2008; therefore the transfer occurred outside the one year prior to filing for bankruptcy.[55] Additionally, the debtors argue that the transfer is devoid of fraudulent intent because the Alonzos have provided credible and legitimate business reasons for making the transfers and the Alonzos' interest in Tri-Koon Holdings had no value.

The court finds that the plaintiffs have satisfied the first two elements under § 727(a)(2)(A) by a preponderance of the evidence. The plaintiffs proved that there was a transfer of property and that the property belonged to the debtors: namely, the debtors transferred their interest in Tri-Koon Holdings to Blackburn.[56] There is some question as to whether the third element has been proved by the plaintiffs. At trial, the plaintiffs asserted that the Alonzos

---

[52] *Pavy v. Chastant (In re Chastant)*, 873, F.2d 89, 90 (5th Cir. 1989).
[53] *In re Pratt*, 411 F.3d 561, 565 (5th Cir. 2005).
[54] *In re Powers*, 979 F.2d 1533 (5th Cir. 1992).
[55] Trial transcript of 1/12/11 at p. 118.
[56] The Alonzos and Blackburn all testified that there was nothing to transfer, i.e., that Tri Koon Holdings was a shell L.L.C. that had been created for another purpose, and just existed, doing nothing, so when Blackburn needed an entity to use for the purpose of holding the TECO stock, he was given permission from the Alonzos to use Tri-Koon Holdings. In this sense there was a transfer of property, although according to the debtors, it had no value at the time they told Blackburn he could use it. Nothing the plaintiffs have argued contradicts the proposition that Tri-Koon Holdings had no value in October 2008, which is when the Alonzos testified that they gave Blackburn permission to use Tri-Koon Holdings. Trial transcript of 5/19/11 at pp. 119-20. The plaintiffs' argument that the Alonzos' interest in Tri-Koon Holdings was worth $10 million dollars rests on the assumption that they donated their interest in the L.L.C. to Blackburn in March 2009, which was after the TECO stock had been transferred to Tri-Koon Holdings.

15

transferred their interest in Tri-Koon Holdings "after March 2009."[57] Carolyn Alonzo testified that the transfer was made in October 2008, just prior to the time Treaty Petroleum was merged into TECO.[58]

That the court cannot fix a definite date for the transfer based on the evidence presented at this trial is of no moment because the plaintiffs have failed to satisfy the fourth element of the claim: that the debtors acted with intent to hinder, delay, or defraud a creditor or officer of the estate. The court could find no evidence offered at trial on this point; the plaintiffs' brief states only that the fraudulent intent can be "inferred from the sequence of events" prior to the transfer.[59] At the end of the trial, the court ordered the plaintiffs to brief this claim with reference to specific evidence supporting the elements of § 727(a)(2)(A). The plaintiffs' vague reference to inferences drawn from a course of conduct without any instances of even circumstantial evidence is not the specific evidence requested by the court, and does not satisfy the plaintiffs' burden of proving actual intent by a preponderance of the evidence. The plaintiffs' imply that the Alonzos transferred their interest in Tri-Koon Holdings as a result of a state court judgment in a separate lawsuit having been rendered against Paul Alonzo, but that allegation coupled with nothing more than the statement that fraudulent intent can be inferred from this is not enough to meet their burden of proof. The Alonzos, Blackburn and Mr. Mulshine all testified that the Alonzos involvement with Tri-Koon Holdings was limited to having formed the company for use in a transaction that had nothing to do with the instant cases, and which never took place; and that the transfer of any interest the Alonzos had was made well before any stock

---

[57] Trial transcript of 6/24/11, p. 232. *See also* Trial transcript of 1/12/11, p. 45; Trial transcript of 1/10/11, p. 81-82, ( Hallin's testimony is that Tri Koon was owned by both Blackburn and the Alonzos as of December 31, 2008.)
[58] There was no formal act of donation or other document donating the stock, so it is difficult, if not impossible, to establish the exact date that the Alonzos transferred their stock. The plaintiffs claim that it was March 2009 because that is when Carolyn Alonzo removed Paul Alonzo's name from the list of managing members on the 2009 annual report for Tri-Koon Holdings. Plaintiffs' Exhibit 91.
[59] Trial transcript of 6/24/11, p. 232.

in TECO was transferred to Tri-Koon Holdings.[60] The rest of the record supports this testimony, and the court finds it credible. The plaintiffs, therefore, have failed to prove their case under § 727(a)(2)(A) of the Bankruptcy Code.

### **SECTION 727(a)(4)(A)**

The plaintiffs have objected to the debtor's discharge by arguing that the debtors made a false statement under oath at the § 341 hearing on March 4, 2010, a violation of §727(a)(4)(A) of the Bankruptcy Code.[61] In order to deny a discharge under this provision, the plaintiffs must prove five elements: (1) the debtor made a statement under oath, (2) that statement was false, (3) the debtor knew the statement was false when it was made, (4) the debtor made the statement with fraudulent intent, and (5) the statement related materially to the bankruptcy case.[62] The plaintiffs must prove all five of these elements by a preponderance of the evidence.[63]

The plaintiffs have alleged that Carolyn Alonzo made false statements under oath at the § 341 meeting of the creditors. Specifically, the plaintiffs allege that Carolyn Alonzo testified that Phoenix Oil & Gas had never issued any stock certificates. The plaintiffs further allege that this testimony by the debtors is a material misrepresentation and that the debtors had, in fact, signed stock certificates issued by Phoenix Oil & Gas. The debtors concede that Carolyn and Paul Alonzo each made the statements made under oath, but argue that the statements were the result of confusion on the part of the Alonzos and were not knowingly made with intent to mislead. Instead, the debtors contend that the inconsistencies in the Alonzos' testimony regarding whether

---

[60] Trial transcript of 1/12/11 at pp. 102, 117-18. Trial transcript of 5/20/11 at pp. 85-93.
[61] Section 727(a)(4)(A) states:

> The court shall grant the debtor a discharge, unless the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account.

[62] *In re Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992).
[63] *In re Duncan*, 562 F.3d at 695.

17

Phoenix Oil & Gas issued stock certificates were inadvertent misstatements that merely reflected the extent of Carolyn and Paul Alonzo's recollection at the time.

The plaintiffs point specifically to the statements made at the § 341 hearing on February 18, 2010. The plaintiffs have successfully proven the first element of the claim—that the debtor made a statement under oath—as the debtors were under oath and on the record at the § 341 meeting. As to the second element, the plaintiffs contend that the debtors made false statements, namely that Paul Alonzo first testified that there was never any stock issued in Phoenix Oil & Gas and later in the same meeting conceded that it was possible that stock was issued in Phoenix Oil & Gas. Additionally, Carol Alonzo testified at the same meeting that she honestly could not remember whether or not stock was issued, but that it was a possibility.[64]

The court is not convinced that these were false statements within the prohibitions of §727(a)(4)(A). The statements are seemingly contradictory, but they are not necessarily false. Even if they were false, the plaintiffs have failed to prove the third and fourth elements of §727(a)(4)(A): that the debtors knew the statements were false when made and that the statements were made with fraudulent intent. Although it has been shown that there was stock issued in Phoenix Oil& Gas, the specific language from the § 341 meeting suggests that when the statements were made, one of the debtors, Carolyn Alonzo, could not remember whether or not Phoenix Oil & Gas had issued stock. The other, Paul Alonzo, conceded that it was possible that stock was issued.

The plaintiffs, nevertheless, allege that the debtors knew the statements were false and made the statement with fraudulent intent. To prove these allegations, the plaintiffs point again

---

[64] Exhibit 86, Transcript of 341 meeting held 2/18/10 at pp. 18 and 125; transcript of 341 meeting held 3/4/10 at pp. 50-51.

18

to "the inference created from the entire sequence of events" as evidence of fraudulent intent.[65] Again, this broad, vague and general reference does not satisfy the burden of proving that the Alonzos knew the statement was false, and thus the plaintiffs' claim fails on the third element. Furthermore, the plaintiffs' reiteration of "the inference created from the entire sequence of events" as evidence of fraud fails to satisfy the plaintiffs' burden of proving the Alonzos' specific intent to defraud, and therefore the plaintiffs have failed to prove the fourth element. The plaintiffs have failed to prove their case under § 727(a)(4)(A) of the Bankruptcy Code.

### SECTION 523(a)(2)(A)

The plaintiffs also allege that any debt that the court finds is owed to them by the Alonzos is non-dischargeable under § 523(a)(2)(A) because it is a debt that was obtained by false pretenses or fraud.[66] In order for the court to find that a debt is nondischargeable because the debt was incurred under false pretenses, a false representation or actual fraud, the plaintiffs must satisfy a five factor test by a preponderance of the evidence: (1) the debtor made representations; (2) at the time the representations were made, the debtor knew that they were false; (3) the debtor made the representations with the intent and purpose to deceive the creditor; (4) the creditor relied on such representations; and (5) the creditor sustained losses as a proximate result of the representations.[67] In order to prevail in this claim, however, there must first be a debt. Because the court has not found that there is a debt owed to the plaintiffs by the Alonzos, the plaintiffs' § 523(a)(2)(A) claim is dismissed.

---

[65] Trial transcript of 6/24/11, p. 243.
[66] Section 523(a)(2)(A) states:

> A discharge under section 727, 1141, 1228(a) 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

[67] *In re Quinlivan*, 434 F.3d 314, 317 (5th Cir. 2005).

## IV. CONCLUSION

For the foregoing reasons, the court finds that the plaintiffs have failed to carry their burden of proof under §§ 727(a)(2)(A), 727(a)(4)(A) and 523(a)(2)(A) of the Bankruptcy Code. These causes of action are dismissed. The plaintiffs have proved their case with respect to the breach of contract and fraud claims but have failed to prove the unjust enrichment claim. The defendants have failed to prove their counterclaim. The court dismisses the unjust enrichment claim and the counterclaim. A separate judgment will be entered in accordance with this opinion.

New Orleans, Louisiana, May 29, 2012.

*J. A. Brown*
Jerry A. Brown
U.S. Bankruptcy Judge